JAMES S. OSKROBA, Plaintiff-Appellant, v. THE VILLAGE OF HOFFMAN ESTATES *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—09—2634

Opinion filed September 2, 2010.

Thomas F. McGuire & Associates, Ltd., of Long Grove (Thomas F. McGuire and Jolanta A. Zinevich, of counsel), for appellant.

Arnstein & Lehr LLP, of Chicago (Hal R. Morris, Jenifer H. Caracciolo, Christina E. Lutz, and Arthur L. Janura, of counsel), for appellees.

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff James Oskroba appeals from an order of the circuit court of Cook County affirming the ruling of the Village of Hoffman Estates (Village) denying him and his spouse insurance coverage under the Public Safety Employee Benefits Act (Employee Benefits Act) (820 ILCS 320/1 *et seq.* (West 2006)). On appeal, plaintiff contends that the Village erred by ruling that he was not entitled to benefits under the Employee Benefits Act and that he is entitled to reimbursement for payments he made to maintain health insurance under the Attorneys Fees in Wage Actions Act (Wage Actions Act) (705 ILCS 225/0.01 *et seq.* (West 2006)). We affirm.

## BACKGROUND

Plaintiff filed a request for disability pension health insurance benefits under the Employee Benefits Act with the Village. On September 2, 2008, James Norris, a hearing officer for the Village, conducted a hearing at which plaintiff testified that he had been working for the Village fire department for 37 years prior to going on a line-of-duty disability pension from the firefighters pension fund. Plaintiff was married, and his wife did not have health insurance.

Plaintiff further testified that on the morning of March 13, 2006, he was working as a firefighter EMT driver when a fire engine returned to the station after responding to a fire. Lieutenant Wayne Rothbauer ordered plaintiff and others to service the engine, and plaintiff considered it to be an emergency situation because the engine needed to be serviced immediately so that it would be available to respond to a call. Plaintiff injured his left shoulder while lifting a fire hose to place it on the truck. Plaintiff explained that the engine he was servicing was the only one in the station and that the closest station with an engine was 7 to 10 miles away. On cross-examination, plaintiff stated that there was not another call pending when he was injured while servicing the engine.

Village Fire Chief Robert Gorvett testified that when a fire truck returns from a call in which the hose has been used, it is normal practice to remove the wet hose and replace it with a dry hose. In the event an emergency call is received while an engine is temporarily out of service, the call would be assigned to the next closest vehicle. Fire

Chief Gorvett opined that plaintiff was not responding to an emergency when he injured his arm. On cross-examination, Fire Chief Gorvett stated that the nearest station to plaintiff's was about 4½ miles away. He also explained that he did not consider the servicing of an engine to be an emergency situation because he generally viewed an emergency as a call for help from the public.

Plaintiff introduced the transcript of a hearing held on July 1, 2008, by the Firefighters Pension Fund Board of Trustees of Hoffman Estates (Pension Board) into evidence. Plaintiff testified at the hearing that he injured his rotator cuff while attempting to pick up a fire hose and that he remained unable to perform his job duties despite undergoing surgery and physical therapy. Plaintiff also introduced the Pension Board's July 25, 2008, finding and decision, in which it found that he was performing an act of duty and responding to an emergency relating to a fire when he was injured and determined that he was entitled to a line of duty disability pension.

Norris entered his written finding and decision on October 10, 2009, in which he found that plaintiff had suffered a shoulder injury that disabled him as a firefighter, that he had been awarded a duty disability pension, and that his injury did not occur while he was responding to what is reasonably believed to be an emergency. Norris determined that plaintiff did not meet the eligibility requirements of the Employee Benefits Act and was therefore not eligible to receive insurance coverage thereunder.

On November 7, 2008, plaintiff filed a complaint in which he asked the circuit court to reverse the Village's denial of benefits under the Employee Benefits Act and to award him reimbursement for the money he had paid for health insurance for himself and his wife and for the legal fees he incurred in filing and prosecuting that claim pursuant to the Wage Actions Act. On December 16, 2008, the Village filed a motion to dismiss plaintiff's complaint, asserting that he failed to state a claim under the Employee Benefits Act because he did not allege that he was injured while responding to what is believed to be an emergency and that he failed to state a claim under the Wage Actions Act because insurance benefits are not "wages." On March 31, 2009, the court denied the Village's motion as to plaintiff's claims for benefits under the Employee Benefits Act and for reimbursement under the Wage Actions Act.

On May 13, 2009, plaintiff filed a memorandum in support of his complaint, in which he asserted that he was entitled to benefits under the Employee Benefits Act because he was injured during what he reasonably believed was an emergency and that insurance benefits constituted "wages" and could form the basis for recovery under the

Wage Actions Act. The Village responded that the determination that plaintiff was not responding to what is reasonably believed to be an emergency when he was injured was not against the manifest weight of the evidence, that plaintiff waived his claim for attorney fees under the Wage Actions Act, and that insurance benefits are not construed as "wages" under the Wage Actions Act. Following plaintiff's reply, the circuit court entered a written order affirming the Village's denial of plaintiff's request for benefits under the Employee Benefits Act, finding that plaintiff's belief that he was responding to an emergency when he was injured was not reasonable. Plaintiff now appeals from that order.

## ANALYSIS

■ In this appeal, plaintiff first contends that the Village erred when it ruled that he was not entitled to benefits under the Employee Benefits Act. Pursuant to the Employee Benefits Act, a firefighter is entitled to have his and his spouse's entire health insurance premium paid for by his employer if he suffers a catastrophic injury while responding to what is reasonably believed to be an emergency. 820 ILCS 320/10 (West 2006).

■ Plaintiff first asserts that the Village was barred from determining whether he was entitled to benefits under the Employee Benefits Act by the doctrines of collateral estoppel and waiver. Collateral estoppel is an equitable doctrine that precludes a party from relitigating an issue already decided in a prior proceeding. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 293 (1995). Collateral estoppel is applicable only where the issue decided in the prior adjudication is identical with the one presented in the suit in question, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Gumma v. White*, 216 Ill. 2d 23, 38 (2005).

Plaintiff maintains that collateral estoppel applies in this case because the Pension Board had already determined that he was responding to an emergency when he was injured prior to the hearing on his request for benefits under the Employee Benefits Act before the Village. The Village responds, and we agree, that the issue decided by the Pension Board is not identical with the one presented in plaintiff's request for benefits under the Employee Benefits Act.

The record shows that on July 25, 2008, the Pension Board rendered its decision that plaintiff was entitled to a disability pension pursuant to section 4—110 of the Illinois Pension Code (Pension Code) (40 ILCS 5/4—110 (West 2006)), which provides that a firefighter is entitled to a disability pension if he is permanently disabled by an

injury incurred in or resulting from the performance of an act of duty. In doing so, the Pension Board found that plaintiff was injured while responding to an emergency.

■ Although the Pension Board found that plaintiff was injured while responding to an emergency, the issue before it was whether he was injured in the performance of an act of duty, and thus entitled to a disability pension pursuant to section 4—110 of the Pension Code. 40 ILCS 5/4—110 (West 2006). In order to find that plaintiff was entitled to a disability pension, the Pension Board was not required to determine that he suffered a catastrophic injury or that he was responding to an emergency at the time, as the Village was required to in order to find him eligible for benefits under the Employee Benefits Act. 820 ILCS 320/10 (West 2006). Thus, the Pension Code issue decided by the Pension Board is not identical with the Employee Benefits Act issue presented to the Village, and we conclude that collateral estoppel did not bar the Village from denying plaintiff's claim for benefits under the Employee Benefits Act.

■ Plaintiff further maintains that the Village waived its ability to assert that he was not responding to what is reasonably believed to be an emergency when he was injured by failing to intervene in the hearing before the Pension Board and allowing the Pension Board to determine that he was responding to an emergency when he was injured. As stated above, the issue decided by the Pension Board is distinct from the issue of plaintiff's qualification for benefits under the Employee Benefits Act, and the Village therefore has not waived its ability to determine that plaintiff was not entitled to such benefits.

Plaintiff next asserts that he is entitled to benefits under the Employee Benefits Act because the evidence shows that he suffered a catastrophic injury while he was on duty and responding to what he reasonably believed to be an emergency. We initially note that the parties agree that plaintiff's injury was catastrophic within the meaning of the Employee Benefits Act and disagree only over whether he suffered that injury while responding to what is reasonably believed to be an emergency.

Plaintiff maintains that this court should interpret the word "emergency" as used in the Employee Benefits Act to provide that any firefighter who is injured in the line of duty and receives a disability pension is automatically entitled to benefits. In doing so, plaintiff points out that the term "emergency" is not defined in the Employee Benefits Act and asserts that the statute is remedial and should be liberally construed in his favor. In addition, plaintiff claims that the legislative history of the statute makes clear that the Illinois General Assembly intended that any firefighter who is injured in the

line of duty and receives a disability pension is automatically entitled to benefits under the Employee Benefits Act. The Village responds that the award of a line-of-duty pension only satisfies the first requirement of the Employee Benefits Act and does not negate the need for proof that the injury arose out of a response to what is reasonably believed to be an emergency in order to satisfy the second requirement.

The construction of the Employee Benefits Act is a question of law that we review *de novo*. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003). This court's primary objective in construing the meaning of a statute is to ascertain and give effect to the legislature's intent. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). In addition, the statute should be construed as a whole and, if possible, in a manner that renders no term meaningless or superfluous. *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 524 (2002). Based on these principles, we conclude that the Employee Benefits Act does not provide all firefighters who are injured in the line of duty and receive a line-of-duty disability pension with an automatic entitlement to benefits.

■ To qualify for a line-of-duty disability pension, a firefighter must show that he was injured while in the performance of an act of duty. 40 ILCS 5/4—110 (West 2006). "A firefighter shall be considered 'on duty' while on any assignment approved by the chief of the fire department *** if the assignment is related to the fire protection service of the municipality." 40 ILCS 5/4—110 (West 2006). A firefighter is entitled to benefits under the Employee Benefits Act, however, if he suffers a catastrophic injury or is killed in the line of duty (820 ILCS 320/10(a) (West 2006)) and the injury or death occurred as a result of the "firefighter's response to what is reasonably believed to be an emergency" (820 ILCS 320/10(b) (West 2006)). Thus, if we were to agree with plaintiff that any firefighter who receives a line-of-duty disability pension is automatically entitled to benefits under the Employee Benefits Act, we would render the requirement in section 10(b), that the firefighter be injured while responding to what is reasonably believed to be an emergency, superfluous and meaningless. We therefore conclude that there is no automatic right of qualification for benefits under the Employee Benefits Act for firefighters who have been injured in the line of duty and receive a line-of-duty disability pension. *Lemmenes v. Orland Fire Protection District*, 399 Ill. App. 3d 644, 652-53 (2010), *appeal allowed*, 236 Ill. 2d 556 (2010); *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 397 Ill. App. 3d 679, 690-91 (2009), *appeal allowed*, 236 Ill. 2d 552 (2010).

In reaching this conclusion we note that while our supreme court has held that the term "catastrophic injury" as used in the Employee Benefits Act is synonymous with an injury resulting in a line-of-duty disability pursuant to section 4—110 of the Pension Code, the court did not hold that the award of a line-of-duty pension negated the need for proof that the injury arose out of the response to what is reasonably believed to be an emergency. *Krohe*, 204 Ill. 2d at 400. We also note, as plaintiff points out, that the members of the General Assembly who introduced the bill described it on four occasions as providing that full-time firefighters who are killed or disabled in the line of duty, and their spouses and children, shall continue their health benefits. 90th Ill. Gen. Assem., Senate Proceedings, November 14, 1997, at 136 (statements of Senator Donahue); 90th Ill. Gen Assem., House Proceedings, October 28, 1997, at 16 (statements of Representative Tenhouse); 90th Ill. Gen. Assem., Senate Proceedings, May 16, 1997, at 192 (statements of Senator Donahue); 90th Ill. Gen. Assem., House Proceedings, April 14, 1997, at 180 (statements of Representative Tenhouse). However, we point out that while courts give some consideration to statements by a sponsor of a bill, such statements are not controlling (*Kunkel v. Walton*, 179 Ill. 2d 519, 536 (1997)), and in this case the legislative history is insufficient to convince us that the General Assembly intended for section 10(b) of the Employee Benefits Act to be superfluous and meaningless.

Plaintiff further maintains that he was entitled to benefits under the Employee Benefits Act because he was responding to what he reasonably considered to be an emergency when he was injured. Citing the Merriam-Webster Online Dictionary, plaintiff asserts that this court should interpret the term "emergency" consistent with its dictionary definition, which is "[1] an unforeseen combination of circumstances or the resulting state that calls for immediate action" and "[2] an urgent need for assistance or relief," and that this court should consider his subjective view in determining whether he was responding to an emergency when he was injured. Merriam-Webster Online Dictionary (2010), *available at* http://www.merriam-webster.com/dictionary/emergency (last visited Aug. 20, 2010). The Village responds that plaintiff could not have believed he was responding to an emergency when he was injured as a matter of law and that his subjective belief that he was doing so was not reasonable.

The determination of whether plaintiff was responding to what is reasonably believed to be an emergency presents a mixed question of law and fact because it requires the Village and this court to examine the legal effect of a given set of facts, and we therefore review the Village's determination under the clearly erroneous standard of review.

*City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). A decision is clearly erroneous where the entire record leaves the reviewing court with the definite and firm conviction that a mistake has been made. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001).

Pursuant to the Employee Benefits Act, a firefighter is entitled to have his and his spouse's entire health insurance premium paid for by his employer if he suffered a catastrophic injury while responding to what is reasonably believed to be an emergency. 820 ILCS 320/10 (West 2006). Although the term "emergency" is not defined in the Employee Benefits Act, this court has adopted the definition of the word "emergency" as set forth by the Second District (*DeRose v. City of Highland Park*, 386 Ill. App. 3d 658, 661 (2008)), which, citing Webster's Third New International Dictionary, defined an "emergency" as a situation that is "urgent and calls for immediate action." *Lemmenes*, 399 Ill. App. 3d at 650; *Gaffney*, 397 Ill. App. 3d at 689.

▪ We conclude that the Village's determination that plaintiff was not injured while responding to what is reasonably believed to be an emergency is not clearly erroneous. The record shows that plaintiff injured his shoulder when he lifted a fire hose while servicing a fire engine that had just returned from responding to a fire. At the time plaintiff was injured the fire engine was not responding to an emergency call, nor was the engine being prepared to respond to a pending call. Although that engine would not be available to respond to another call until it had been serviced and was the only one in plaintiff's station, any emergency calls received while the engine was temporarily out of service would be assigned to the next closest vehicle. In addition, plaintiff's testimony that the nearest station was 7 to 10 miles away and opinion that the servicing of the engine was an emergency situation were contradicted by Fire Chief Gorvett's testimony that the nearest station was about 4½ miles away and his opinion that the situation was not an emergency.

While we agree with plaintiff that he was obeying a mandatory order when he was injured and that there would have been a delay in response had the station received an emergency call while the engine was out of service, the evidence also showed that he was not responding to an emergency call, that no such call was pending when he was injured, and that a policy was in place to assign an emergency call to the next closest vehicle if the engine was out of service at the time. As such, the record does not leave this court with the definite and firm conviction that the Village made a mistake when it determined that plaintiff was not responding to what is reasonably believed to be an emergency when he was injured and denied his request for benefits

under the Employee Benefits Act, and we therefore conclude that the Village's determination is not clearly erroneous.

The parties agree that plaintiff would only be entitled to benefits under the Wage Actions Act if we determined that he was entitled to benefits under the Employee Benefits Act, and since we have determined that plaintiff is not entitled to such benefits, we conclude that his claim for benefits under the Wage Actions Act is moot.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

O'MARA FROSSARD and NEVILLE, JJ., concur.